Reed W. Larsen - Idaho State Bar #3427
COOPER & LARSEN, CHARTERED
151 North Third Avenue, Second Floor
P.O. Box 4229
Pocatello, ID 83205-4229
Telephone: (208) 235-1145
Facsimile: (208) 235-1182
reed@cooper-larsen.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MARK L. MANSFIELD and THERESA A. MANSFIELD, individually, and on behalf of their minor child, CM,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No: _____<br><br>**VERIFIED COMPLAINT** |

COME NOW Plaintiffs, Mark L. Mansfield and Theresa A. Mansfield, individually, and on

behalf of their minor child, CM, by and through the undersigned counsel, and for a cause of action

against the above-named Defendant, state and allege as follows:

### INTRODUCTION

1.      At all times material herein, Plaintiffs Mark L. Mansfield and Theresa A. Mansfield

are and were adult citizens of the United States, who currently reside in Pocatello, Bannock County,

Idaho.

2.      At all times material herein, the United States of America is a U.S. Government

defendant.

VERIFIED COMPLAINT - PAGE 1

## JURISDICTION AND VENUE

3.      Jurisdiction and venue are proper in this Court under 28 U.S. Code § 1346 and 28 U.S.C. § 1402.

## GENERAL ALLEGATIONS AND CAUSE OF ACTION

4.      On the afternoon of March 16, 2017 Plaintiffs Mark and Theresa Mansfield's son, CM, was playing with his dog Casey on a hill a few hundred feet from his home. The Mansfields' home is in the Buckskin area which is located in the mountains approximately 6 miles outside the city limits of Pocatello. While playing and throwing a toy for his dog, CM noticed a pipe protruding from the ground that he thought looked like a sprinkler pipe. When he reached down and touched the pipe, it exploded with a loud bang, knocking CM to the ground and spewing an orange powdery substance. The orange substance covered CM's clothes and got into his left eye. CM used snow to wipe the orange substance off of him. He then looked around and saw his dog Casey laying on the ground convulsing and foaming at the mouth. CM ran to his house and got his mother, Theresa, who immediately went up the hill to the dog and found him dead. Theresa then called her husband Mark, who is a Pocatello physician, and he immediately came home and tried to resuscitate the dog, but was unable to do so. CM's clothes were covered with the orange substance, so Theresa instructed him to immediately remove the clothing and shower.

5.      Plaintiffs immediately contacted the Bannock County Sheriff's Department who responded, along with the Pocatello and Chubbuck fire departments, the Hazardous Materials Unit and an officer from the U.S. Forest Service.

6.      In their investigation of the area, detectives located a small cropping of rocks with a pipe sticking out of the ground. Nearby they also found a dog toy that CM and his dog had been

playing with.  They then located a second pipe approximately 59 feet from the pipe that had exploded and killed Casey.  After some additional research and investigation it was concluded that the pipes were M-44 devices or "cyanide bombs" used by the United States Department of Agriculture Animal and Plant Health Inspection Service to kill coyotes and other predators.  The detectives were unable to locate any warning signs anywhere near the location of the cyanide bombs. After determining that the pipes were cyanide bombs, Plaintiffs and all of the investigating officers and detectives were transported to Portneuf Medical Center by ambulance for decontamination and testing.

7.     To date, CM is still getting regular blood tests, and has been experiencing headaches, likely caused by his exposure to the sodium cyanide contained in the cyanide bomb.

8.     On the day of the incident, Todd Sullivan, who is the Eastern District Supervisor for the United States Department of Agriculture Animal and Plant Health Inspection Service, was contacted and brought to the scene of the detonated cyanide bomb by the Pocatello Fire Department. At that time he admitted he had placed two cyanide bombs in that location on February 25, 2017, he also stated there were two additional cyanide bombs that he had placed close by.  He indicated that the United States Department of Agriculture Animal and Plant Health Inspection Service had an agreement with the owner of the sheep that are grazed in that area that permitted the Department to kill coyotes with M-44s, traps, snares, firearms, etc. on private land.

9.     On March 20, 2017, a detective with the Bannock County Sheriff's Department contacted a Bureau of Land Management Field Staff Ranger, who informed him that the cyanide bombs were in fact wrongfully placed by Mr. Sullivan on BLM land.

10.     On April 4, 2017, Mr. Sullivan was interviewed a second time by the Bannock County Sheriff's Department.  When asked about the location of the cyanide bombs, Mr. Sullivan admitted that he made a mistake in placing cyanide bombs on BLM land.  He stated he was supposed to put them on nearby private land, and although he had the capability to differentiate between the property lines, he did not do so.

11.     Mr. Sullivan also stated during his interview that while there had been no actual attacks on sheep by coyotes in 2017, he wanted to "get a jump on the season' by using the cyanide bombs.

12.     The cyanide bomb, or M-44, is approved for use in Eastern Idaho by the EPA only under very stringent use restrictions, as it is dangerous device containing a concentrated dose of sodium cyanide designed to kill canids in a matter of minutes.  Additionally, cyanide, as used in the cyanide bombs, is a mitochondrial toxin that is among the most rapidly lethal poisons known to man.  Every individual trained to use the cyanide bomb is required to carry with them the antidote of amyl nitrite in case of accidental exposure to the sodium cyanide.

13.     Mr. Sullivan blatantly disregarded portions of the EPA's M-44 Use Restrictions, including, but not limited to the following:

> 7. The M-44 device shall only be used on or within 7 miles of a ranch unit or allotment where losses due to predation by wild canids are occurring or where losses can be reasonably expected to occur based upon recurrent prior experience of predation on the ranch unit or allotment. **Full documentation of livestock depredation, including evidence that such losses were caused by wild canids, will be required before applications of the M-44 are undertaken.**
>
> ...
>
> 8. The M-44 device **shall not** be used: (1) in areas within national forest or other Federal lands set aside fore recreational use, (2) **areas where exposure to the public and family and pets is probable,** (3) prairie dog towns, or (4)

except for the protection of Federally designated threatened or endangered species, in National or State Parks; National or State Monuments; federally designated wilderness areas; and wildlife refuge areas.

...

17. Supervisors of applicators shall check the records, warning signs, and M-44 devices of each applicator at least once a year to verify that all applicable laws, regulations, and restrictions are being strictly followed.

...

23. Bilingual warning signs in English and Spanish shall be used in all areas containing M-44 devices. All such signs shall be removed when M-44 devices are removed.

> a. Main entrances or commonly used access points to areas in which M-44 devices are set shall be posted with warning signs to alert the public to the toxic nature of the cyanide and to the danger to pets. Signs shall be inspected weekly to ensure their continued presence and ensure that they are conspicuous and legible.
>
> b. **An elevated sign shall be placed within 25 feet of each individual M-44 device warning persons not to handle the device.**

...

25. In all areas where the use of the M-44 device is anticipated, local medical people shall be notified of the intended use. This notification may be through a poison control center, local medical society, the Public Health Service, or directly to a doctor or hospital. They shall be advised of the antidotal and first-aid measures required for treatment of cyanide poisoning. It shall be the responsibility of the supervisor to perform this function.

Mr. Sullivan failed to comply with the above stated requirements of the EPA. First, Mr. Sullivan had no documentation that livestock depredation was occurring in the Buckskin area in 2017, nor any evidence that such losses were caused by coyotes. He told the detective that he simply wanted to "get a jump on the season." Secondly, Mr. Sullivan placed the cyanide bombs in a location where there are many homes in close proximity, and in fact the cyanide bomb that injured

CM and killed Casey was placed only 300 yards from the Mansfields' home, with a second bomb 59 feet away from the first.   Mr. Sullivan also admitted that despite having the capability to differentiate between property lines, he did not do so, and mistakenly placed the cyanide bombs on BLM land rather than private property.   Additionally, none of the residents in the Buckskin area, or even the owner of the private property where Mr. Sullivan intended to place the devices, had any idea that cyanide bombs had been placed in the area, and all of the witnesses in the area denied seeing any warning signs.

### FIRST CAUSE OF ACTION – NEGLIGENCE/AND NEGLIGENCE PER SE

14.     Plaintiff incorporates by reference the preceding paragraphs as if set forth in full herein.

15.     Mr. Sullivan, an employee of Defendant United States of America, placed M-44 cyanide bombs in a negligent manner, and negligent per se manner, such that he caused injuries to Plaintiffs and the death of the family dog.

16.     Mr. Sullivan owed a duty to protect the public, including Plaintiffs, from the dangerous M-44 devices, by adhering to EPA rules for properly placing the M-44 devices; by providing sufficient warning signs near the location of the M-44 devices, and, by placing the M-44 devices in the correct location.

17.     Mr. Sullivan breached the aforesaid duties when he planted the M-44 cyanide bomb that injured Plaintiffs and killed their family dog.

18.     As a direct and proximate result of Mr. Sullivan's breach and his negligent acts and/or omissions, Plaintiffs have incurred general and special damages, including pain and suffering in an amount to be proven at trial; medical expenses in an amount to be proven at trial; and other

such damages all in an amount to be proven at the time of trial. Plaintiffs seek pre-judgment interest, as allowed by law, from the time the damages were incurred until judgment is entered.

19. As a further direct and proximate result of Mr. Sullivan's negligent breach and his negligent acts or omissions, Plaintiffs have been forced to retain the undersigned counsel and incur attorney's fees and costs for which they should be reimbursed by the Defendant.

## SECOND CAUSE OF ACTION – IMPUTED NEGLIGENCE

20. Plaintiffs incorporate by reference the preceding paragraphs as if set forth in full herein.

21. At all times relevant hereto, Mr. Sullivan acted in the course and scope of his employment for the United States of America, and was the Eastern District Supervisor for the United States Department of Agriculture Animal and Plant Health Inspection Service.

22. The United States Department of Agriculture Animal and Plant Health Inspection Service, upon information and belief, gave Mr. Sullivan permission and/or instructions to place the cyanide bomb that detonated and injured Plaintiffs and killed their dog.

23. Defendant United States of America is responsible for all the negligent acts and/or omissions of Mr. Sullivan, and, as a result, is negligent per se.

24. As a direct and proximate result of Defendant's breach and negligent acts and/or omissions, Plaintiffs have incurred general and special damages, including pain and suffering in an amount to be proven at trial; medical expenses in an amount to be proven at trial; and other such damages all in an amount to be proven at the time of trial. Plaintiffs seek pre-judgment interest, as allowed by law, from the time the damages were incurred until judgment is entered.

25. As a further direct and proximate result of Defendant's negligent breach and negligent acts or omissions, Plaintiffs have been forced to retain the undersigned counsel and incur attorney's fees and costs for which they should be reimbursed by the Defendant.

**WHEREFORE,** Plaintiffs Mark L. Mansfield and Theresa A. Mansfield, individually, and on behalf of their minor child, CM, pray for judgment against the Defendant United States of America as follows:

i. For damages in an amount in excess of $75,000 and to be more specifically proven at the time of trial, for non-economic damages, pain and suffering, and loss of enjoyment of life;

ii. For damages in an amount in excess of $75,000 and to be more specifically proven at the time of trial for economic damages;

iii. For attorney fees and costs incurred herein; and,

iv. For such other and further relief as the Court deems equitable and just.

DATED this 3rd day of May, 2018.

COOPER & LARSEN, CHARTERED

By  /s/ Reed W. Larsen
        REED W. LARSEN

## VERIFICATION

STATE OF IDAHO    )
                          :ss
County of Bannock    )

MARK L. MANSFIELD and THERESA A. MANSFIELD, being first duly sworn, depose and state as follows:

That they are the Plaintiffs herein; that they have read the foregoing document, know the contents thereof, and that the facts therein stated are true to the best of their knowledge and belief.

_____
MARK L. MANSFIELD

_____
THERESA A. MANSFIELD

SUBSCRIBED AND SWORN TO before me this _14_ day of ~~May~~ June, 2018.

_____
NOTARY PUBLIC FOR IDAHO
Residing at: _Pocatello ID_
My Commission expires: _1-29-24_

(SEAL)

VERIFIED COMPLAINT - PAGE 9