UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK L. MANSFIELD and THERESA A. MANSFIELD, individually, and on behalf of their minor child CM,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 4:18-CV-278-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it a motion for partial summary judgment filed by the Government. The Court heard oral argument on December 13, 2019, and granted the motion from the bench. This decision will supplement the Court's oral ruling.

# BACKGROUND FACTS

On March 16, 2017, plaintiff CM, a minor child, and his dog Kasey were playing in the area about 300 yards from their home. CM saw what looked like a pipe protruding from the ground. He did not know that the "pipe" was an M/44 cyanide bomb placed by the Government to kill wolves and coyotes that might be preying on livestock. No warning signs were installed. CM pulled on the device and it exploded, spraying cyanide on CM's face, left eye, left arm, and his legs and

his chest, leaving an orange powdery residue on him. The explosion also sprayed cyanide on Kasey. While CM survived the incident, the dog died. The family – CM and Mark Mansfield, his father, and Theresa Mansfield, his mother – filed this lawsuit to recover damages for their injuries. The Government has agreed not to contest negligence and the remaining issues are causation and damages.

The Government's motion for partial summary judgment seeks to dismiss "all personal injury claims, all claims arising from Plaintiffs' fear of future injury, all intentional infliction of emotional distress claims, and all of Mark and Theresa Mansfield's negligent infliction of emotional distress claims." *See Motion (Dkt. No. 29)*.

## ANALYSIS

### Personal Injury Claims – Claims for Damages for Cyanide Exposure

The Court will first address the Government's motion seeking to dismiss the personal injury claims based on cyanide exposure. Those personal injuries include CM's migraine headaches, and vomiting, that started after the incident. The record indicates that, initially, he suffered from migraine headaches every 5 to 6 days, but currently is experiencing them every 2 to 3 weeks. CM is taking medication for the headaches which make it harder for him to pay attention so that he has to work harder in school. He also has suffered from numbness in his left hand and forearm,

and has nightmares where he experiences the event again and again. Also, at times both of his eyes get red and burn.

There is no dispute that cyanide can kill or, in lesser doses, cause physical ailments such as headaches. There is also no dispute that CM was exposed to cyanide and there are at least questions of fact over the parents' exposure: Theresa Mansfield reached down the throat of the convulsing Kelsey thinking he might be choking and then held him in her lap; Mark Mansfield carried Kelsey down the hill to their driveway getting bloody slobber on himself.

The issue is whether this cyanide exposure caused any ailments. At the hearing, plaintiffs alleged for the first time that a medical record from a treating physician contains the necessary expert testimony to show that the cyanide exposure caused their ailments. This argument was not contained in the briefing. The medical record was prepared by a Dr. M. Elizabeth Gerard, who appears to be a neurologist. The record relied on by plaintiffs is dated March 30, 2017, and was prepared following Dr. Gerard's exam of CM. It states that

> [h]is exam is normal. It is likely the symptoms he has experienced are from exposure. Unfortunately, not much is known about low level exposure and chronic neurologic effects other than the well described parkinsonian syndrome. He is improving now, do not think that MRI would be helpful. If symptoms continue, they will let me know. May consider referral to Primary children's neurology department.

*See Records (Dkt. No. 29-17).* Plaintiffs have not submitted any affidavit of Dr. Gerard and her deposition was never taken. There is nothing in the record

**Memorandum Decision & Order – page 3**

concerning her qualifications. She says causation is "likely" but does not explain whether she reaches that conclusion to a reasonable degree of medical certainty. An expert opinion would need to describe the symptoms and identify her methodology for concluding that the cyanide exposure caused those symptoms. She never identifies the "symptoms" she refers to. What is the level of "exposure" that she assumed? Is she merely recounting what CM told her or did she conduct an independent analysis of her own? All the medical tests in the record show no cyanide levels in the blood and CM's MRI showed no damage. So she cannot be relying on other medical records. Her brief note quoted above does not identify her qualifications or her methodology and therefore does not constitute an expert opinion that can be relied upon in this summary judgment proceeding.

Plaintiffs have submitted four other items of evidence to show exposure caused their ailments:

1. Dr. Mansfield intends to testify that their physical symptoms are the result of cyanide exposure;
2. The opinion of toxicologist, Dr. Sander Orent that exposure caused the ailments;
3. Testimony apparently from Dr. Mansfield regarding the experience of an individual named Dennis Slaugh; and
4. The temporal connection – that is, plaintiffs' physical ailments started soon after the M/44 explosion.

With regard to the first item, Dr. Mansfield's testimony on causation would be an opinion based on scientific or technical knowledge. He therefore cannot testify as a lay witness under Rule of Evidence 701 and must testify as an expert under

**Memorandum Decision & Order – page 4**

Rule 702. However, he has not been designated as an expert and has not filed the expert report required by Rule 26.[1] Moreover, he has no training or experience to qualify as an expert in toxicology or the effects of cyanide exposure. His testimony will be based on articles he found on the internet but the conclusions of those articles are inadmissible hearsay. While an expert can rely on otherwise inadmissible material to form an opinion, the expert must establish that other experts in the field of toxicology or cyanide exposure would reasonably rely on those articles. *see Rule of Evidence 703,* Dr. Mansfield is not an expert and has no information on what experts in the field rely upon. The bottom line is that there is no way to know if the articles he relies upon are reliable. Thus, Dr. Mansfield's testimony on the effects of cyanide exposure is inadmissible.

Dr. Mansfield's discussion with Dr. Sander Orent is inadmissible hearsay if Dr. Mansfield attempts to relate it in trial testimony. To get around that, plaintiffs could attempt to call Dr. Orent himself, but that attempt would fail because Dr. Orent's testimony, based on his scientific knowledge, would be expert testimony that has not been disclosed through the filing of an expert report as required by

---

[1] Dr. Mansfield was disclosed as a rebuttal expert. However, the Court will typically not consider rebuttal expert reports from a non-moving party at the summary judgment phase. *Ellis v. Corizon, Inc.*, 2018 WL 6268199, at *4 (D. Idaho Nov. 30, 2018). This is because summary judgment tests the adequacy of a plaintiff's case-in-chief, and not what evidence the plaintiff might be able to present in response to evidence which the defendant may, or may not, present at trial. *Id.*

Rule 26.  Thus, Dr. Orent's opinion is not admissible and provides no support for causation.

Dr. Mansfield's testimony regarding Dennis Slaugh's death is likewise inadmissible hearsay.  Dr. Mansfield learned about Slaugh from newspaper accounts, a movie called "Lethal Control", and from talking with an individual named Brooks Fahy – Dr. Mansfield never talked to Slaugh himself.  *See Dr. Mansfield Deposition (Dkt. No. 34)* at pg. 266, 271.

Dr. Mansfield learned that in 2002, Slaugh was sprayed with cyanide from a M44 bomb and died 15 years later.  But this testimony gleaned from news articles and Brooks Fahy contains several layers of inadmissible hearsay.

Plaintiffs' counsel has provided Slaugh's death certificate stating that his death was due to "Coronary artery disease" and just under that statement is a title "Other significant conditions" and next to it is listed "cyanide poisoning from M44 device 2002."

The statement on the death certificate is inadmissible hearsay.  Even if the certificate is admissible generally as a public record, any hearsay it contains must be separately admissible under some exception.  Here, the certificate states that no autopsy was done so the listing of cyanide exposure must have come from the hearsay accounts of family members or some other hearsay source.  No exception

applies for that level of hearsay.  Thus, the evidence regarding Dennis Slaugh is inadmissible.

This leaves as the only evidence of causation the temporal connection between CM's exposure and his physical ailments.  Plaintiffs cite several cases stating the importance of a temporal connection in finding causation.  But each of the cases cited by plaintiffs involved evidence in addition to the temporal connection itself, such as expert testimony.

A representative example is the case cited by plaintiffs, *Clausen v M/V New Carissa,* 339 F.3d 1049 (9th Cir. 2003).  There, an expert was allowed to testify that the temporal connection between the deaths of oysters and an oil spill from the ship "New Carissa" was an important factor in his opinion that the oil spill caused the oyster death, even in the absence of any studies showing what level of oil is needed to kill oysters.  The expert was a renowned marine biologist and had studied the dead oysters, finding oil from the New Carissa in each one studied.  *Id.* at 1061.  He ruled out all other causes of the oyster deaths by conducting a differential diagnosis with an established methodology.  *Id.*  This is similar to the other cases cited by plaintiffs.

Such expert testimony is missing here.  Plaintiffs cite no cases holding that temporal connection by itself is sufficient to create a material issue of fact precluding summary judgment on causation.

If temporal connection by itself was sufficient, patients who have been vaccinated by a physician could sue that physician for malpractice if the patient was shortly thereafter diagnosed with autism even though there is no scientific evidence linking vaccinations with autism – that is clearly contrary to the law and demonstrates why temporal connection by itself is not sufficient.

**Parents' Claims for Emotional Distress from Worry over CM's health**

The Court will address next the parents' claim for negligent and intentional infliction of emotional distress for their worry and anxiety over CM's health. Idaho law does not permit recovery for emotional distress arising from a child's injury. *See Hayward v. Yost*, 242 P.2d 971, 977 (Idaho 1952). Thus, the parents' claims for negligent and intentional infliction of emotional distress resulting from their worry and anxiety over CM's health must be dismissed.

**Plaintiffs' Claims for Fear of Future Harm**

The Government seeks to dismiss plaintiffs' claims for damages for their fear of future harm from their exposure to cyanide. On this issue there are two important cases. The first is *Neal v. Neal*, 125 Idaho 617 (1994) where the Idaho Supreme Court stated as follows:

> Damages are recoverable for emotional distress claims resulting from the present fear of developing a future disease only if the mental injury alleged is shown to be sufficiently genuine and the fear reasonable. We hold that there can be no reasonable fear of contracting such a disease absent proof of actual exposure.

The second case was decided by Judge David Nye in this District -- *Hepburn v. Boston Scientific Corp.*, 2018 WL 2275219 (D. Id. May 17, 2018):

> Where the basis for awarding damages is the potential risk of susceptibility to future disease, the predicted future disease must be medically reasonably certain to follow from the existing present injury. While it is unnecessary that the medical evidence conclusively establish with absolute certainty that the future disease or condition will occur, mere conjecture or even possibility does not justify the court awarding damages for a future disability which may never materialize.

*Hepburn*, 2018 WL 2275219 at *4 (quoting *Sterling v. Velsicol*, 855 F.2d 1188, 1204 (6th Cir. 1988)). In this case there is only "mere conjecture" that future harm might occur. At most there might be a "possibility" of future harm, but that is not sufficient under the law. Thus, the claim for damages for fear of future harm must be dismissed.

**<u>Claims for Infliction of Emotional Distress</u>**

The Government seeks to dismiss the parents' claims for intentional and negligent infliction of emotional distress and CM's claim for negligent infliction of emotional distress. These claims were never pled in the complaint. They are duplicative of the claim for negligence, which is not at issue in this motion. At most the intentional infliction claim might be necessary to obtain punitive damages but plaintiffs cannot obtain punitive damages against the Government. Thus, the Court will dismiss these claims.

**Memorandum Decision & Order – page 9**

## Conclusion

For these reasons, the Court will grant the Government's motion for partial summary judgment dismissing (1) all personal injury claims based on cyanide exposure; (2) all claims based on a fear of future harm; (3) Mark and Theresa's claims for negligent and intentional infliction of emotional distress; (4) CM's claim for intentional infliction of emotional distress.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for partial summary judgment (docket no. 29) is GRANTED and that the following claims are dismissed: (1) all personal injury claims based on cyanide exposure; (2) all claims based on a fear of future harm; (3) Mark and Theresa's claims for negligent and intentional infliction of emotional distress; and (4) CM's claim for intentional infliction of emotional distress.

DATED: December 16, 2019

B. Lynn Winmill
U.S. District Court Judge